THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. SCERO VISCONTE, Plaintiff in Error.

*Opinion filed June 22, 1927—Rehearing denied October 7, 1927.*

CRIMINAL LAW—*what constitutes the confidence game.* The confidence game consists in gaining possession of money or property by some trick or device or any swindling operation by which advantage is taken of the confidence which the victim has reposed in the swindler, and the offense is committed where, after winning the victim's friendship and confidence, the swindler absconds with money obtained as a favor or accommodation on the pretense that it is needed as a deposit on a real estate transaction, the evidence showing that the deposit was never made or even requested.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding.

CHARLES S. GIBBS, and EDMUND BURKE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, H. E. FULLENWIDER, State's Attorney, and MERRILL F. WEHMHOFF, (J. M. WELDON, and L. E. SULLIVAN, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Scero Visconte was convicted in the circuit court of Sangamon county of swindling Joseph Frankie out of $1500 by means and by use of the confidence game and sentenced to imprisonment in the penitentiary. He has sued out this writ of error to review the judgment, and will hereafter be referred to as defendant.

Frankie, an Italian, owned and operated a fruit and grocery store in the village of Auburn, near Springfield. In March, 1925, he first met defendant in Auburn. Defendant was introduced to Frankie by Miss Spagnoli, who testified she had known defendant in Marseilles, Illinois, in

October, 1924. They boarded at the same house. Defendant came to Auburn in March, 1925. Miss Spagnoli was working for Frankie in his store. Defendant talked about buying property in Springfield and said he wanted someone who could show him around the city. Miss Spagnoli told him Frankie would be a good man to do that and introduced him to Frankie. Some days afterwards witness saw Frankie deliver to defendant $1500 in money and defendant left right away afterwards. She never talked with him after he got the money. He had been in Auburn about three weeks.

Joseph Frankie testified he is an Italian and had lived in Auburn six years. He had worked in a mine there but for the last three years owned and operated a store. He met defendant in Auburn about March 10, being introduced to him by Miss Spagnoli. Defendant frequently came to the store. He wanted witness to go with him to Springfield, where he said he was going to buy property. He asked witness to take him to some real estate dealer. After some inquiry they were advised to go to Charles Sullivan and made several trips to see him. About March 27 they looked at four or five houses with Sullivan. Defendant said he liked the house called the Jones place and decided to buy it. On their way back from Springfield to Auburn defendant told witness that Sullivan said he would have to pay him a deposit to hold the place for defendant. Witness believed the price of the property was $35,000 or $45,000. After the parties returned to Auburn defendant said he would go back to Springfield and make a deposit on the place but ought to have some more money, and asked witness if he could let him have some. Witness told defendant he might, if it was a small sum. Defendant said he was $1500 short and asked witness if he could raise that much. He showed witness some bank books he had, one showing a deposit in a Chicago bank of $9000, a deposit of $1200 and some smaller deposits, the smallest one not less

326–32

than $300. He showed witness another bank book showing deposits of more than $25,000. He said he had a lot of money but would have to go and get it. By borrowing various amounts witness secured $1500 and gave it to defendant. That was on Saturday, and defendant left Auburn that afternoon, agreeing to return Monday or Tuesday, but he did not do so. Witness next saw defendant in the Vermilion county jail in June. Defendant told witness he was in jail for making a check to a hotel on a bank where he had no funds. He said he had no money to pay witness. Defendant talked Italian and also French, and witness did not know whether he was a Frenchman or an Italian.

Charles Sullivan testified he took defendant to examine the Jones house, on West South Grand avenue. The price was $35,000. He offered to pay $20,000, but Jones would not accept it. Defendant might have been back to see about the property afterwards, but witness could not remember. He never told defendant he would have to make a deposit to hold the place and never received any money from defendant on any property.

The foregoing is the substance of the testimony for the State. Defendant offered no evidence, but at the conclusion of the State's evidence made a motion that the court instruct the jury to find him not guilty. The motion was overruled. The argument to the jury was concluded, the jury were instructed and retired to consider their verdict shortly before noon, Saturday, November 20, and returned a verdict of guilty on Sunday, at about two o'clock in the afternoon.

The errors assigned are, that the verdict is not sustained by the evidence; that the court erred in giving three instructions for the People and refusing one for defendant; and that the verdict was the result of coercion and not the impartial consideration of the law and the evidence.

The confidence game "consists in gaining possession of money or property by some trick or device or any swindling

operation by which advantage is taken of the confidence which the victim has reposed in the swindler." (*People* v. *Rosenbaum,* 312 Ill. 330, and cases cited.) The acts which defendant did to swindle Frankie out of the $1500 perfectly fit the definition quoted. He made a pretense of wanting to buy property in Springfield and enlisted Frankie to take him to some real estate broker who would show him property. They made a number of visits to Springfield and defendant finally said he would buy the Jones property. Afterwards he told Frankie that Sullivan required him to put up a deposit to hold the property but that he did not have enough money, and asked Frankie if he could furnish it. The property negotiations lasted about three weeks, during which time defendant was with Frankie much of the time. It is evident he was securing the confidence of Frankie and his friendship before he made the request for the money. When he asked for the money he exhibited bank books showing large deposits in a bank in Chicago and one in Ottawa. Immediately on receiving from Frankie the money he left Auburn and never returned. He never deposited any money with Sullivan, and Sullivan never told him he would have to make a deposit. We do not think it could be made much plainer that the whole thing of buying property was a subterfuge and that defendant's intention was to gain the confidence of Frankie and swindle him out of $1500; which he successfully did. In defendant's argument he called it an ordinary business transaction wherein Frankie loaned defendant $1500 which defendant failed to re-pay. We do not understand ordinary business of loaning money is transacted in that way. The verdict is sustained by the evidence.

The objections made to the three instructions given on behalf of the People are, we think, hypercritical, and there was no error committed in giving them. The jury were fairly instructed as to the law both for the People and the

defendant, and there is no reversible error in the giving or refusing of instructions.

Lastly, defendant contends the verdict was the result of coercion. The jury considered the case from about noon on Saturday until about two o'clock in the afternoon on Sunday before returning their verdict. That is the only claim upon which coercion is based, and it does not even raise a suspicion of coercion. So far as the record shows, at no time did the jury report they could not agree and ask to be discharged. The suspicion that the jury were coerced into agreeing upon a verdict is wholly unwarranted and without merit.

The judgment is affirmed.       *Judgment affirmed.*